UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LUIS MADRID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   14-3056 |
| | ) |
| HENRY JACKSON, *et al.* | ) |
| | ) |
| Defendants. | ) |

**SUMMARY JUDGMENT OPINION**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need and an Eighth Amendment claim for unnecessary and wanton infliction of pain arising from his incarceration at Lincoln Correctional Center. The matter comes before this Court for ruling on the Defendants' Motions for Summary Judgment. (Docs. 52, 63, 78). Defendants' motions are granted.

**PRELIMINARY MATTERS**

Of the three motions for summary judgment now pending before the Court, Plaintiff has only filed a response to the motion

filed by Defendants Alexander, Brown, Carlock, Grady, Hamilton, Perretton, Rhodes, Tripplet, and Wahls.  (Docs. 52, 58).  For the other two pending motions, Plaintiff was sent a Rule 56 Notice that advised him that failure to respond to the motions would result in the Court accepting the Defendants' statements of fact as true for purposes of ruling on the motions.  (Docs. 67, 79); FED. R. CIV. P. 56(e)(2) (if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).  As Plaintiff is *pro se* the Court will consider Plaintiff's response to the first motion as applicable to all other pending motions for summary judgment.  To the extent that Plaintiff's response does not address a properly supported assertion of fact, the Court will consider the fact undisputed.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).

The party moving for summary judgment must show the lack of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## FACTS

At all times relevant, Plaintiff was incarcerated at Lincoln Correctional Center ("Lincoln"). Defendants were all employed at Lincoln in the following capacities: Defendant Charron was the Assistant Warden; Defendant Stoldt was a correctional major; Defendant Silas was a correctional officer; Defendant Wahl was a physician; Defendant Johnson was the Director of Nursing; and, the remaining Defendants (Carlock (a/k/a Claussen), Hamilton, Tripplet, Rhodes (a/k/a Rose), Perretton (a/k/a Perrett), Grady, Brown, and Alexander) were nurses.

Prior to his incarceration in the Illinois Department of Corrections, Plaintiff had been previously diagnosed with, and was receiving treatment for, congestive heart failure, diabetes, asthma, sleep apnea, and a condition in his legs that resulted in swelling and varicose veins.  Plaintiff's pre-incarceration medications included an anti-coagulent medication for his heart condition, insulin and other medications to control blood sugar for his diabetes, medication for his leg condition, and a CPAP machine for sleep apnea.

Plaintiff arrived at Lincoln on March 15, 2013.  Prison officials conducted a medical screening at that time and noted Plaintiff's medical conditions, prescription medications, and other treatments. (Doc. 54-1 at 2).  The prescriptions for ongoing medications noted in the initial screening were renewed at that time.  Compare id., with (Doc. 54-43 at 6).  Prison officials did not provide Plaintiff with a CPAP machine, but they made an appointment for Plaintiff to see the doctor regarding this condition.  (Doc. 54-1 at 2).

Only doctors at Lincoln can write prescriptions for medications.  Throughout the relevant time period, Plaintiff's prescriptions were renewed.  Various pain killers (over-the-counter

and narcotic) were also prescribed when necessary. Once prescribed, nurses and other medical staff are responsible for the distribution and administration of the medications. Each of the nurse Defendants dispensed medication to Plaintiff at some point, but Plaintiff alleges they did so with hostile attitudes.

Medical personnel document which medications are dispensed to inmates in the inmate's Medication Administration Record ("MAR"). According to Plaintiff's MAR, Plaintiff received daily insulin as prescribed and was provided with a consistent supply of those prescribed medications for his other conditions that he was allowed to keep in his possession. Plaintiff was prescribed an albuterol nebulizer for use as needed to treat his asthma, though the MAR indicates that Plaintiff never used it.

On March 24, 2013, Plaintiff slipped on some ice, fell, and complained of rib pain. (Doc. 54-1 at 5; 52-2). Shortly after it happened, nearby prison officials requested emergency medical treatment. Defendant Brown and another nurse transported Plaintiff in a wheelchair to the healthcare unit. Prison staff notified a non-defendant physician.

Defendant Brown administered pain medication via a shot. Plaintiff testified in his deposition that Defendant Brown had failed to check his (Plaintiff's) medical chart prior to administering the medication. Pl.'s Dep. 81:22-82:1. As a result of this pain medication, Plaintiff testified that his heart began to race. The alleged condition passed and Plaintiff did not suffer additional harm.

Plaintiff later complained of increased rib pain. Medical staff notified the physician and Plaintiff was prescribed narcotic pain medication (Vicodin). Plaintiff also complained of chest pain. Medical staff offered to perform an electrocardiogram (EKG), but Plaintiff refused and stated he could not lie down. Plaintiff testified that as these events transpired, Defendant Grady was discourteous. Pl.'s Dep. 82:10-14 ("[Defendant Grady] repeatedly said, 'Quit your bullshit, or I'll send you to seg.'").

Plaintiff's requests to be transported to an outside hospital were denied—first by Defendant Brown, then by Defendant Grady and Defendant Stoldt. According to Plaintiff, he was not sent to an outside hospital because Defendant Stoldt, a correctional major, would not authorize it. According to Defendant Stoldt, medical

personnel had not indicated that Plaintiff needed outside medical attention. Even if they had, transport would have been near impossible as a major snowstorm had shut down area roads. Plaintiff was housed in the infirmary until the next day. During this time, Plaintiff's condition and vital signs were monitored, and Plaintiff was provided with pain medication. Plaintiff was provided with over-the-counter pain medication upon his discharge back to general population.

At some point during this stay in the infirmary, Plaintiff alleges that Defendant Alexander took his oxygen mask and turned off his oxygen tank because Plaintiff was not wearing it properly. The medical records do not disclose that Plaintiff was wearing an oxygen mask, but the records do show that medical staff checked Plaintiff's blood oxygen saturation (SpO2) throughout the time period. The results of this test were normal.

On March 27, 2013, Plaintiff was transported to an outside hospital for complaints of lung congestion. X-rays showed fractured ribs. Physicians at the hospital prescribed pain medication, an albuterol inhaler, and an incentive spirometer to assist with breathing. (Doc. 56-11 at 11; 56-12 at 1-4).

Upon Plaintiff's return to Lincoln, Plaintiff was housed in the infirmary. Prison physicians ordered the same treatment as the hospital doctors, except that Plaintiff was provided access to a nebulizer instead of an inhaler. Compare (Docs. 56-11 at 10-11; 56-12 at 1) (hospital prescriptions), with (Doc. 54-44 at 3) (prison doctor prescription). Nebulizers provide faster relief for asthma than inhalers. According to Plaintiff, Defendant Charron confiscated an ACE bandage that hospital employees provided to Plaintiff for his ribs. Plaintiff testified that Defendant Charron told him she took the bandage because she did not want Plaintiff to puncture a lung. Pl.'s Dep 113:8-11.

While Plaintiff was in the infirmary, Plaintiff testified that Defendant Silas kicked his bed while he was sleeping and told him to sign something. Pl.'s Dep. 48:18-54:5. When Plaintiff did not sign it, Plaintiff testified that Defendant Silas crumpled up the paper and threw it at Plaintiff, striking him in the chin. Id. Plaintiff testified that Defendant Silas did not kick his bed after Plaintiff informed her that he had broken ribs. Id. 52:22-24.

Defendant Doctor Wahl (sued as Wahls) treated Plaintiff from April 2, 2013 through August 21, 2013. During this time,

Defendant Wahl continuously monitored Plaintiff diabetes and adjusted Plaintiff's insulin medications accordingly. Defendant Wahl scheduled Plaintiff to attend a diabetes/hypertension clinic to discuss his conditions with him, referred Plaintiff to an outside cardiologist several times for his heart condition, and referred Plaintiff to a radiologist when she discovered potentially cancerous lumps on Plaintiff's breast.

For Plaintiff's sleep apnea, Defendant Wahl offered Plaintiff a sleep study to assess the extent of the condition. (Doc. 56-13 at 5). Medical records disclose that Plaintiff signed a refusal for the study in September 2013, though Plaintiff later completed one and received a CPAP machine. Pl.'s Dep. 140:21-141:5 (Plaintiff received a CPAP machine approximately 20 months later); (Doc. 56-9 at 8) (signed refusal of sleep study).

When Plaintiff first complained about his leg condition, Defendant Wahl authorized compression socks to relieve the swelling. Several months later, Plaintiff complained again and Defendant Wahl prescribed Gabapentin..

Plaintiff filed this lawsuit on February 14, 2014.

## ANALYSIS

To prevail on an Eighth Amendment claim for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference is more than negligence, but does not require the plaintiff to show that the defendants intended to cause harm. Mayoral v. Sheehan, 245 F.3d 934, 938 (7th Cir. 2001). Liability attaches under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The parties do not dispute that Plaintiff's chronic medical conditions (congestive heart failure, diabetes, etc.) constitute a serious medical need. See King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) ("An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotations omitted)).

Defendants Charron, Silas, and Stoldt argue that Plaintiff's rib injury does not constitute a serious medical need because the injury typically heals on its own. While Plaintiff's rib injury healed on its own, the medical records show that this type of injury required treatment for management of the pain often associated with it. Therefore, the Court finds that a reasonable juror could conclude that Plaintiff's rib injury constituted a serious medical need. See also Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996) (subjective complaints of pain, if believed by the trier of fact, could support a finding of a serious medical need even if no other objective symptoms exist).

### Defendant Wahl

Defendant Wahl was Plaintiff's treating physician and therefore her treatment decisions are a matter of professional discretion with which the courts will not interfere unless the evidence suggests that "'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)). In other words, a medical professional is deliberately indifferent only if "the decision by the

professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. (quoting same).  Within these bounds, a prison medical professional "is free to make his own, independent medical determination as to the necessity of certain treatments or medications," and deference to a prior doctor's diagnosis is not required to satisfy the requirements of the Eighth Amendment. Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012).

Plaintiff does not allege that prison officials ignored his requests for medical treatment, only that Defendant Wahl should have prescribed him certain medications that he was receiving prior to his incarceration.  The medical records do not indicate that Defendant Wahl was ignoring Plaintiff's medical conditions, only that she chose to provide a course of treatment different from that pursued by Plaintiff's previous physicians.  A mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability.  Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

In addition, the medical records indicate that Plaintiff's medication was consistently adjusted when Plaintiff's condition changed, and, thus, no inference exists that Defendant Wahl chose to pursue a course of treatment known to be ineffective, or one that fell outside the bounds of accepted professional judgment. When Plaintiff needed medical treatment from outside specialists, Defendant Wahl accommodated those needs. Therefore, the Court finds that no reasonable juror could conclude that Defendant Wahl was deliberately indifferent to Plaintiff's serious medical needs.

### Nurse Defendants

Plaintiff argues that the nurse defendants treated him in an unprofessional manner and had "hostile" attitudes towards him. In DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000), the Seventh Circuit held that "standing alone, simple verbal harassment does not constitute cruel and unusual punishment." Id. at 612. However, the definition of "simple" is elusive—what is simple "in the sense of being brief, lucid, and syntactically simple," can also be devastating. Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015) (stating as an example that lying to a prisoner by telling him he has incurable brain cancer or that his family has been killed in a car

crash is purely verbal, "yet as cruel…as in cases of physical brutalization of prisoners by guards").  Nonetheless, whether simple or complex, most verbal harassment by prison personnel does not trigger constitutional scrutiny.  Id.

Plaintiff has not provided any evidence to show that the actions of these Defendants were anything more than isolated incidents, or that such incidents caused him harm.  In this sense, Plaintiff's claims are distinguishable from those claims asserted in recent Seventh Circuit decisions.  See id. (prisoner alleged that prison guard had subjected him to increased risk of sexual assault and ridicule by making verbal sexual comments and repeatedly urinating in front of the prisoner "while smiling"); Hughes v. Farris, 809 F.3d 330, 332 (7th Cir. 2015) (civil detainee stated claim upon allegations that he lived in constant fear of violent attack because officials berated him "with an onslaught of homophobic epithets," and encouraged inmates to harm Plaintiff because Plaintiff was homosexual); see also Hughes v. Scott, __ F.3d __, 2016 WL 1127736, at *1 (7th Cir. 2016) (civil detainee stated First Amendment retaliation claim after officials had allegedly ignored his

grievances, called him names, and issued veiled threats that his life would be better if he stopped complaining).

Furthermore, the recent Seventh Circuit cases cited above involved review of the respective district court's decisions to dismiss pursuant to 28 U.S.C. § 1915A. At this stage in the proceeding, the standard is different. See Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the put up or shut up moment in a lawsuit. Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." (internal citations and quotation marks omitted)).

Plaintiff does not allege that the actions of medical staff caused other inmates to treat him differently, or that he lived in fear as a result of their presumed unprofessional conduct. On the one occasion where Defendant Grady threatened to send Plaintiff to segregation, a correctional lieutenant quelled the threat almost immediately. Pl.'s Dep. 82:20-83:9 (correctional lieutenant told Grady decisions regarding segregation belonged to the correctional

officers).  Therefore, the Court finds that no reasonable juror could conclude that Plaintiff suffered a sufficient constitutional deprivation.

Next, Plaintiff asserts a general claim that Defendants Carlock (Claussen), Hamilton, Tripplet, Rhodes (Rose), Perretton (Perrett), Alexander, Brown, Grady, and Alexander failed to dispense his prescribed medications.  Plaintiff does not identify any specific instances and the medical records show that Plaintiff was given his prescribed medications on a routine basis.  To the extent that Plaintiff sought medication that had not been prescribed (Metformin and Gabapentin), nurses must "defer to treating physicians' instructions and orders in most situations . . . [unless] it is apparent that the physician's order will likely harm the patient." Berry v. Peterman, 604 F.3d 435, 443 (7th Cir. 2010).  These medications were not prescribed until after Plaintiff filed suit and these Defendants had no authority to prescribe medication absent a physician's order.

With respect to Defendant Brown's alleged actions on March 24, 2013, the alleged failure to check Plaintiff's chart prior to administering medication is, at best, negligence.  As stated above,

negligence is not sufficient to attach constitutional liability. Moreover, Plaintiff's allegations that prison medical staff failed to provide bandages for a small amount of blood resulting from a routine finger prick does not amount to a sufficient deprivation. See Cooper, 97 F.3d at 914 ("A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.").

For these reasons, the Court finds that no reasonable juror could conclude that these defendants were deliberately indifferent.

### Remaining Defendants

Defendants Charron, Silas, and Stoldt were correctional officers at Lincoln and not responsible for the medical care of inmates at the prison. During the relevant time period, Defendant Johnson was the Director of Nursing whose duties were primarily administrative.

Nonmedical prison officials are generally not held constitutionally liable in cases where the official deferred to the

judgment of the medical staff.  See Berry, 604 F.3d at 440 (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers).  As the court in Greeno explained:

> If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno, 414 F.3d at 656 (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).  In other words, "the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and

nurses treating the prisoners in their care without fear of liability for doing so." Berry, 604 F.3d at 440.

Plaintiff's requests for medical treatment were not ignored by the medical staff. According to Plaintiff, he was examined by physicians "[m]aybe over 40 times, 50 times." Pl.'s Dep. 99:12-17. Plaintiff has not presented any evidence to show that Defendant Stoldt disregarded an order to send Plaintiff to the hospital on March 24, 2013, or that any of these Defendants otherwise ignored orders. Nor can Plaintiff show that Defendant Charron acted with deliberate indifference by confiscating his ACE bandage. By Plaintiff's own admission, Defendant Charron stated she was attempting to help Plaintiff.

Finally, Plaintiff has not presented evidence that Defendant Silas knew about Plaintiff's injury prior to kicking his bed, nor has Plaintiff alleged that Defendant Silas' actions caused an unnecessary infliction of pain. Plaintiff testified that he did not need any additional medical treatment as a result of incident, and that Defendant Silas did not kick the bed after Plaintiff asked her to stop. Pl.'s Dep. 168:6-9; 52:19-21. Therefore, the Court finds that

no reasonable juror could conclude that these Defendants violated Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motions for Summary Judgment [52][63][78] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See FED. R. APP. P. 24(a)(1)(c); see also Celske v Edwards, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED:     March 29, 2016.

FOR THE COURT:

*s/Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
